**Joseph PETERS, Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Appellee.**

**No. 91–7093.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1992.

Decided June 16, 1992.

Lawrence M. Mann, Washington, D.C., for appellant.

Joseph S. Crociata, with whom Martha Ann Knutson, Washington, D.C., was on the brief, for appellee.

Before WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

In this appeal, Joseph Peters challenges the district court's dismissal of his suit against the National Railroad Passenger Corporation (Amtrak) for injuries arising out of a train derailment as well as its denial of his motion for relief from the dismissal order. The district court concluded that Peters was bound by a settlement in a class action filed in the Eastern District of Pennsylvania. We affirm.

I.

On the night of January 29, 1988, Peters was a passenger on the "Night Owl," a train operated by Amtrak between Washington, D.C. and Boston, Massachusetts. While operating in the vicinity of Chester, Pennsylvania, the "Night Owl" collided with a ballast regulator, a piece of maintenance equipment travelling on the same track, and derailed, injuring Peters and other passengers. Peters and others were admitted to Sacred Heart Medical Center (Sacred Heart) in Chester, Pennsylvania for treatment.

Thereafter, on March 1, 1988, a class action suit, captioned *Sala v. National R.R. Passenger Corp.*, No. 88–1572 (E.D.Pa. Mar. 1, 1988), was filed on behalf of the injured passengers in the federal district court for the Eastern District of Pennsylvania. On April 29, 1988, the district court certified the class and directed Amtrak to provide a passenger list to the class counsel. Amtrak compiled the list from Sacred Heart's records on the injured passengers. The records included progress notes listing Peters' address as "930 Westend Avenue, New York, NY." [1] It did not provide Peters' apartment number or zip code.[2]

At the district court's direction, class counsel sent to the class members, by first class mail, a notice of pendency of class action on August 26, 1988, and a notice of proposed settlement on July 28, 1989. Peters maintains he received neither notice.

---

**1.** Amtrak did not use the hospital's emergency department record which contained more detailed information than the progress notes. *See* J.A. 126–128 (affidavit of David Dawson). In Peters' case, the emergency department record contained his address, including his apartment number, and a telephone number. While the district court made no such finding, the record suggests that the emergency department record could not be released without Peters' written authorization. *See* J.A. 209 (affidavit of Phyllis Newon).

Peters also alleges that several days after the accident, he submitted an Amtrak Injury/Illness Report to Amtrak's New York office, setting forth his full address. Amtrak disputes this. Peters did not produce this document until his rule 60(b) motion for relief from the order and did not explain why the document was not produced earlier.

**2.** While the passenger list Amtrak provided did not include Peters' zip code, the record shows that class counsel added a zip code, albeit an incorrect one.

On September 27, 1989, the district court approved the settlement agreement and on April 23, 1990, it issued an order dismissing the class action with prejudice.

On January 4, 1991, Peters sued Amtrak in the federal district court for the District of Columbia seeking $500,000 in compensatory and $1,000,000 in punitive damages for the injuries he sustained in the train wreck. Amtrak moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) asserting the defense of *res judicata.* Amtrak argued that Peters was bound by the settlement in the class action because he was a member of the class and had not opted out. Peters argued that he was not bound because he had not received notice.

The district court granted Amtrak's motion holding that due process required only that Amtrak use its "best efforts" and did not "guarantee ... actual notice." *District Court Memorandum* at 6. The district court further held that Amtrak's "attempts to notify [Peters] of the pendency of the class action were reasonable" and that Peters was bound by the settlement. *Id.* at 6–7.

Thereafter, on April 19, 1991, Peters moved under Fed.R.Civ.P. 60(b) for relief from the district court's order. Peters argued that he had just received from the hospital the emergency department record which included his apartment number. Peters also pointed to an Amtrak Injury/Illness Report he had submitted to Amtrak's New York office to argue that Amtrak had misled the court about its knowledge of his address. On May 24, 1991, the district court denied the motion without opinion.

Peters now appeals arguing that Amtrak had a duty to use reasonable efforts in providing class counsel with the passengers' names and addresses which duty it breached when it provided an incomplete address for Peters. We note that in his opposition to Amtrak's motion to dismiss, Peters argued that Amtrak had a duty under both the due process clause and rule 23 of the Federal Rules of Civil Procedure to provide the best notice practicable. Peters claimed below that Amtrak breached that duty when the notices were mailed to

his Manhattan address without an apartment number and with an incorrect zip code.

## II.

### A. Standard of Review

We review the district court's grant of Amtrak's rule 12(c) motion *de novo.* *See International Paper Co. v. Town of Jay,* 928 F.2d 480, 482 (1st Cir. 1991); *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir.), *cert. denied,* 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989); *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988). We will affirm the district court if the moving party demonstrates that no material fact is in dispute and that it is "entitled to judgment as a matter of law." *Jablonski,* 863 F.2d at 290; 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (Wright & Miller) § 1368, at 517–18 (2d ed. 1990); *cf. Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986) (in reviewing grant of rule 12(c) motion to dismiss for lack of subject matter jurisdiction, "allegations of the complaint should be construed favorably to the pleader") (citation omitted), *rev'd on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Moreover, we "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Jablonski,* 863 F.2d at 290–91; Wright & Miller § 1368, at 518–19. Finally, we review the district court's denial of Peters' Rule 60(b) motion for abuse of discretion. *Lepkowski v. United States Dep't of Treasury,* 804 F.2d 1310, 1315 (D.C.Cir. 1986).

### B. Peters' Inadequate Notice Claim

Where, as here, a class action is maintainable because common questions of law or fact predominate, *see* Fed.R.Civ.P. 23(b)(3), rule 23 requires that "the court ... direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed.R.Civ.P. 23(c)(2).

The rule provides that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974). The purpose of rule 23(c)(2) is to afford members of the class due process which, in the context of the rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment. *Id.* at 173–74, 94 S.Ct. at 2150.

■ It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive "the best notice practicable under the circumstances." *See, e.g., Eisen*, 417 U.S. at 173–75, 94 S.Ct. at 2150–51; *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 281 (E.D.Tex.1985), *aff'd*, 782 F.2d 468 (5th Cir.1986); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D.Pa.1983); *Trist v. First Federal Sav. & Loan Ass'n*, 89 F.R.D. 1, 2 (E.D.Pa.1980); *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 375 (E.D.Pa.1980); *Unicorn Field Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217 (S.D.N.Y. 1973). Relying on the Supreme Court's decisions in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and *Eisen*, Peters argued before the district court that the notices mailed to him were not "reasonably calculated" to inform him of his right to opt out because the address used by class counsel did not include his apartment number and used an incorrect zip code.

We reject Peters' argument. While *Mullane* and *Eisen* require that each individual identifiable "through reasonable effort" receive notice, their endorsement of first class mail as the means of accomplishing that notice as well as their emphasis on "notice *reasonably calculated* ... to apprise interested parties," *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, demonstrate that the due process clause does not amount to a guarantee of notice to a class member. Despite technological advances, the mail is not one hundred per cent reliable. *See*

*Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). Yet the Supreme Court has repeatedly upheld the use of first class mail as a method of notice "reasonably calculated ... to apprise interested parties" of proceedings affecting their rights in a variety of contexts. *See Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 491, 108 S.Ct. 1340, 1344, 1348, 99 L.Ed.2d 565 (1988) (notice to creditor of estate); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) (notice to mortgagee of tax foreclosure); *Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1880–81, 72 L.Ed.2d 249 (1982) (notice to public housing tenants of forcible entry and detainer actions); *Schroeder v. City of New York*, 371 U.S. 208, 214, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 (1962) (notice of condemnation proceeding); *Walker v. City of Hutchinson*, 352 U.S. 112, 116, 77 S.Ct. 200, 203, 1 L.Ed.2d 178 (1956) (same); *Mullane*, 339 U.S. at 319, 70 S.Ct. at 660. The Supreme Court is "obvious[ly] aware[ ] that not every first-class letter is received by the addressee." *Weigner*, 852 F.2d at 646; *see also Mullane*, 339 U.S. at 319, 70 S.Ct. at 660 ("reasonable risks that notice might not actually reach every beneficiary are justifiable"). In none of these cases did the Court require more than sending notice by first class mail. As *Mullane* makes clear, the proper inquiry is not whether Peters received the notices but instead whether the method of providing the notices was "reasonably calculated, under all the circumstances," to inform him of the pendency of the class action and his right to be excluded from it. *Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657; *see also Weigner*, 852 F.2d at 649.

■ We thus turn to the question whether the notices mailed to Peters were "reasonably calculated" to notify him of the class action notwithstanding the address did not include his apartment number and used an incorrect zip code. We are not prepared to say as a matter of law that the omission of Peters' apartment number and zip code rendered the notices not "reasonably calculated under all the circum-

stances" to notify him. With respect to the zip code, it was class counsel not Amtrak who added the incorrect zip code. We note that under section 122.32 of the U.S. Postal Service Domestic Mail Manual, the use of a zip code remains voluntary. *See United States Postal Service Domestic Mail Manual* § 122.32, at 55 (Mar. 1992). While a zip code undoubtedly adds to the preciseness of an address, we doubt that its use would remain voluntary if its omission rendered the mail not reasonably calculated to reach its destination.

Class counsel's error, however, does not affect our analysis. We do not believe that such an error was foreseeable by Amtrak and can fathom no reason that Amtrak should bear the burden of it. Class counsel was, after all, appointed to represent Peters; his putative negligence is not an adequate basis to disturb Amtrak's settled expectation of the finality of the class action. If, for example, Peters had failed to receive the notices because the post office lost them, Peters would have no argument that he was denied due process. Yet Amtrak had no more control over the actions of class counsel than it has over the actions of the post office.

It might be argued that Peters' claim is distinguishable because, unlike the postal service, class counsel is subject to the control of the court and under rule 23(c)(2), it is ultimately the court's responsibility to ensure that due process is provided. But the court must also ensure that Amtrak's due process rights are not violated. As the Supreme Court has noted, " 'the doctrine of *res judicata* is not a mere matter of practice and procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts....' " *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506,

508, 61 L.Ed. 1148 (1917)). A rule that allows a defendant's settled expectation in the finality of litigation to be disturbed when a class member's failure to receive notice is attributable to class counsel's putative negligence could well create a disincentive for future class action defendants to enter into settlements.[3]

As for mailing the notices without Peters' apartment number, we cannot say that it was reasonably foreseeable to those preparing either the address list (Amtrak) or the mailings (class counsel) that Peters' address was incomplete. Unless they had particularized knowledge that 930 West End Avenue was a high rise apartment house or was located in an area of apartment houses, they would not have a reasonable basis for believing that the address was incomplete. Accordingly, we conclude that the absence of Peters' apartment number did not render the notices not "reasonably calculated" to inform him of his rights.

### III.

■ We next turn to Peters' rule 60(b) motion based on his assertion that Amtrak was duty-bound to use reasonable efforts to provide class counsel with the passengers' addresses as ordered by the district court in *Sala.* The *Sala* court ordered Amtrak to "furnish to plaintiff a list of the names and addresses of all passengers on the Night Owl." *See Sala v. Amtrak,* No. 88–1572, 1988 WL 84125 (E.D.Pa. Aug. 4, 1988) (order regarding mailing of notice to class). Peters also relies on the claims form he submitted to Amtrak's New York office after the accident listing his complete address, including an apartment number and a zip code.

We need not decide the questions whether Amtrak had a duty to use reasonable efforts in compiling the address list and whether it breached that duty with respect to Peters. The *Sala* court, not the district court below, is the proper court to interpret and enforce its own order and we conclude

---

**3.** This is not to say that Peters should be without a remedy. Rather, we simply believe that to the extent Peters' claim is actionable, his redress, if any, should come from those responsible for causing his harm. *See, e.g., Zimmer Paper*

*Prods., Inc. v. Berger & Montague P.C.,* 758 F.2d 86, 93–94 (3d Cir.) (recognizing cause of action by class member against class counsel for negligence in providing notice), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985).

that the district court properly declined to consider this argument. While the court might have entertained a timely motion to transfer to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a) or arguably a motion to dismiss on the ground of *forum non conveniens, see, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C.Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), it did not abuse its discretion in denying Peters' rule 60(b) motion.[4] *See Lepkowski,* 804 F.2d 1310, 1315 (D.C.Cir.1986).

### IV.

In summary, we affirm the district court's grant of Amtrak's motion to dismiss on the ground that the mailed notices, despite the absence of Peters' apartment number and zip code from his mailing address, were "reasonably calculated" to apprise him of the class action. We also affirm the district court's denial of Peters' rule 60(b) motion and decline to decide whether Amtrak failed to use reasonable efforts in compiling the address list. Accordingly, the district court's dismissal is

*Affirmed.*

---

4. Peters did not present either the *Sala* order or the claims form to the district court in his opposition to Amtrak's motion to dismiss but instead waited until his rule 60(b) motion for relief from the district court's dismissal. In that motion, however, Peters did not set forth an adequate basis for relief. *See* Fed.R.Civ.P. 60(b) (providing, *inter alia,* for relief for "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence" and "fraud"). It was incumbent on Peters to make such a showing. Even if we assumed that Peters sought relief on the basis that the materials were "newly discovered evidence," Peters made no showing that they could not have been diligently discovered in time to be included in his opposition to Amtrak's motion to dismiss. *See, e.g., Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington,* 699 F.2d 1274, 1278 n. 7 (D.C.Cir.1983); *Carr v. District of Columbia,* 543

F.2d 917, 925 (D.C.Cir.1976). Similarly, Peters' broad assertion that Amtrak misled the district court about its knowledge of his address lacks particularity; Peters did not support the allegation with any statement by Amtrak, in the pleadings or otherwise, that even approaches a misrepresentation. *See Stebbins v. Keystone Ins. Co.,* 481 F.2d 501, 511 (D.C.Cir.1973).

Moreover, had we reached these issues, we note that Peters would be hard put to prove causation. The claims form Peters submitted to Amtrak lists his apartment number as 31A; the affidavit Peters submitted in support of his opposition to Amtrak's motion to dismiss lists his apartment number as 41E and does not state that he moved following the accident. Thus, even if Amtrak had included the apartment number from Peters' claim form on the address it gave to class counsel, the mailing would have been sent to the wrong address.